United States District Court
Southern District of Texas
**ENTERED**
September 16, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUNE R. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2309 |
| | § | |
| THE HOUSING CORPORATION OF | § | |
| GREATER HOUSTON, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendants' Motion for Summary Judgment (Doc. 38). The court has considered the motion, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**.

## I.  Case Background

Plaintiff filed a complaint alleging violations of the Fair Housing Act 42 U.S.C. §§ 3601 et seq., 42 U.S.C. § ("Section") 1981, and state law.

### A.  Factual Background[2]

Plaintiff began living at Jackson Hinds Gardens ("JHG") in April 2007.[3] Defendants are JHG, a residential complex receiving

---

[1]  This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 21, Order Dated Feb. 27, 2015.

[2]  The court takes its facts from the summary judgment record.

[3]  See Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 9.

funding from the United States Department of Housing and Urban Development ("HUD"); the Housing Corporation of Greater Houston ("the Housing Corp."), a housing corporation that owns JHG; Tom F. Lord, President of the Housing Corp.; Gail Cote ("Cote"), an employee of the Housing Corp.; and Nisha Trottie ("Trottie"), the property manager at JHG.[4]

In order to qualify to live at JHG, a person must be "homeless, disabled, low-income, or special needs."[5]  JHG trains its staff on various housing issues, including fair housing laws and issues specific to disabled residents.[6]  Most residents at JHG are disabled.[7]

Harris County Housing Authority ("HCHA") conducts inspections of these units to ensure compliance with HUD regulations, a condition precedent to obtaining HUD funding.[8]  HCHA inspects a unit when the unit is first occupied by a new resident and reinspects the unit annually.[9]  Individual units are inspected along with the shared kitchens and bathrooms.[10]  Plaintiff failed

---

[4]    See Doc 39-1, Ex. A to Defs.' Mot. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 2-4,

[5]    Id. ¶ 5.

[6]    Id. ¶¶ 24, 25.

[7]    Id. ¶ 25.

[8]    See id. ¶ 20.

[9]    See id. ¶ 11.

[10]   See id. ¶ 12.

multiple times to give HCHA access to her unit to conduct inspections.[11]

Bathrooms at JHG are shared by three to four residents.[12] Because the bathrooms are shared, residents have keys to the bathrooms and there are interior locking mechanisms to keep out others when in use.[13] HCHA's inspections never revealed any issues with the locks on the bathrooms, and the bathrooms consistently passed HCHA's inspections.[14]

Bedbugs were an issue at JHG, but JHG treated for them and resolved the problem.[15] Plaintiff allowed access to her unit for pest control treatment in the past, but she denied access several times to JHG's staff and independent pest control contractors.[16] Plaintiff's unit was eventually treated for bedbugs.[17]

JHG filed an eviction proceeding against Plaintiff on June 21, 2014, "for the nonpayment of rent, for failing to sign a lease renewal, and for failing to allow [HCHA] permission to enter the premises to conduct an inspection."[18]   JHG prevailed in the initial

---

[11]    See id. ¶ 20.

[12]    See id. ¶ 13.

[13]    See id. ¶ 15.

[14]    See id. ¶ 14.

[15]    See id. ¶¶ 16, 18, 19.

[16]    See id. ¶¶ 16, 18.

[17]    See id. ¶¶ 16, 17.

[18]    Id. ¶ 21.

court proceedings, but Plaintiff appealed.[19]  JHG and Plaintiff then reached an agreement whereby JHG dropped the eviction proceeding against Plaintiff, and Plaintiff agreed to give HCHA access to her unit for an inspection and to sign a lease renewal with JHG.[20]

## B.  Procedural Background

On August 7, 2014, Plaintiff filed her complaint asserting numerous claims along with a motion for a temporary restraining order.[21]  Plaintiff's motion for a temporary restraining order was denied on August 14, 2014.[22]  Plaintiff originally proceeded pro se, but she acquired a pro bono counsel on November 25, 2014.[23]

Defendants filed an answer on January 6, 2015.[24]  Along with the answer, Defendants Tom F. Lord and Cote filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[25]  Defendants argued in the motion that Plaintiff did not allege sufficient facts in her complaint to support her claims.[26]  Plaintiff filed a response to the motion on

---

[19]     See id. ¶ 22.

[20]     See id.

[21]     See Doc. 1, Pl.'s Compl.; Doc. 2, Pl.'s Mot. for a TRO.

[22]     See Doc. 5, Ord. Dated Aug. 14, 2014.

[23]     See Doc. 15, Defs.' Tom F. Lord & Gail Cote's Mot. to Dismiss for Failure to State a Cl., &, Subject Thereto, Defs.' Orig. Ans.

[24]     See id.

[25]     See id. p. 1.

[26]     See id.

4

January 26, 2015.[27]  Defendants' motion to dismiss was denied on January 27, 2015.[28]

The court entered a scheduling order on March 6, 2015, with a discovery deadline of October 30, 2015, and a dispositive motion deadline of November 20, 2015.[29]  A few months later, Plaintiff's counsel moved to withdraw as counsel of record, citing "irreconcilable differences."[30]  The court allowed Plaintiff's counsel to withdraw and Plaintiff continued pro se.

Defendants designated their expert witnesses on September 30, 2015, to which Plaintiff objected on November 20, 2015, in a motion to exclude expert witnesses.[31]  On November 24, 2015, the court denied Plaintiff's motion.[32]

Defendants filed a motion for extension of time on November 30, 2015, to conduct mediation.[33]  The court granted Defendants' motion, giving the parties until February 29, 2016, to schedule a mediation.[34]  The court also set a new deadline of March 11, 2016,

---

[27]   See Doc. 18, Pl.'s Resp. to Defs.' Mot. to Dismiss.

[28]   See Doc. 19, Ord. Dated Jan. 27, 2015.

[29]   See Doc. 23, Scheduling Ord. Dated Mar. 6, 2015.

[30]   Doc. 26, Pl.'s Counsel's Mot. to Withdraw as Counsel of Record.

[31]   See Doc. 31, Defs.' Designation of Expert Witnesses; Doc. 32, Pl.'s Mot. to Exclude Experts.

[32]   See Doc. 33, Ord. Dated Nov. 24, 2015.

[33]   See Doc. 34, Agreed Mot. for Extension of Time to Conduct Mediation.

[34]   See Doc. 35, Ord. Dated Dec. 1, 2015.

for all dispositive and nondispositive motions.[35]  Plaintiff filed
objections to this ruling that were overruled by the court on
January 7, 2016.[36]  On March 11, 2016, Defendants filed a motion for
summary judgment.[37]  Plaintiff has not filed a response.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists on any material fact and the moving party
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v.
Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a
fact that is identified by applicable substantive law as critical
to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal
Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine,
the dispute regarding a material fact must be supported by evidence
such that a reasonable jury could resolve the issue in favor of the
nonmoving party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736
F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits

---

[35]     See id.

[36]     See Doc. 37, Ord. Dated Jan. 7, 2016.

[37]     See Doc. 38, Defs.' Mot. for Summ. J.; Doc. 39, Def.'s Mem. in Supp.
of Mot. for Summ. J.

that demonstrate the absence of genuine factual issues.  Fed. R. Civ. Pro. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  <u>Stauffer v. Gearhart</u>, 741 F.3d 574, 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

The Local Rules state that failure to respond on a motion will be taken as a representation of no opposition.  L.R. 7.4. Generally, the non-moving party has twenty-one days to file a response before the lack of response is considered a lack of opposition.  <u>See</u> L.R. 7.3.  However, because it would be improper to dismiss an action merely because of a lack of response, this court must carefully consider the merits of an unanswered motion. <u>Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anomia</u>, 776 F.2d 1277, 1279 (5th Cir. 1985)(<u>citing John v. Louisiana Bd. of Trs. for State Colls. & Univs.</u>, 757 F.2d 698, 707-08 (5th Cir. 1985)).

Notwithstanding the local rules, a party moving for summary judgment still has the burden of proving that no issue of material fact exists.  <u>Celotex</u>, 477 U.S. at 323.  If the movant fails to meet his burden the motion must be denied, regardless of the response, or lack thereof, by the nonmovant.  <u>Tubacex, Inc. v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).  However, the court will only

resolve factual controversies in favor of the nonmoving party when a controversy actually exists; in other words, no controversy exists when factual allegations are not challenged by the nonmoving party. <u>Little</u>, 37 F.3d at 1075 (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990)). Therefore, assumptions or inferences that the nonmoving party could or would prove the necessary facts to raise a fact issue will not be made.

### III. Analysis

Plaintiff brings the following claims: violations of the Fair Housing Act; violations of Section 1981; negligence, negligence per se, and gross negligence; trespass; violations of the Texas Property Code §§ 92.0081, 92.024, and 92.331; outrage and invasion of privacy; and negligent hiring, training, supervision, and retention.[38] In this analysis, the court first looks at Plaintiff's federal claims, then her state claims.

**A.   Federal Claims**

**1.   Fair Housing Act**

Section 3604(b) of Title 42 makes it unlawful to "discriminate

---

[38]     In addition, in the prayer for relief section of her complaint, Plaintiff mentions in passing other claims under statutes such as the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. <u>See</u> Doc. 1, Pl.'s Compl. p. 20. However, Plaintiff fails to plead these claims and provide any factual support for them in her complaint. She merely recites the statutes without providing any basis for the claims. Therefore, these claims should be dismissed. Also, in her claims for relief section, Plaintiff mentions two claims for equitable relief and a claim for punitive damages. Such claims for relief can only be granted if Plaintiff has a successful cause of action that warrants granting relief. The court recommends granting summary judgment on all of Plaintiff's claims, and therefore, Plaintiff is not able to seek injunctive relief or punitive damages.

against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race."  Section 3604(f) makes it unlawful to discriminate against someone in the "sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" because of a person's disability.  Plaintiff failed to cite any specific legal support for her Fair Housing Act discrimination claim and the court assumes that the above sections are the ones relied on by Plaintiff.

Plaintiff alleged in her complaint that Defendants violated the Fair Housing Act by discriminating against her on the basis of race, disability, and age.[39]  She alleged that Defendants "owed Plaintiff a duty to operate the property management company that was free from unlawful discrimination, and to hire, train, supervise, and discipline their employees and themselves to discharge that duty."[40]

Defendants argue that these sections of the Fair Housing Act only govern "access to or availability of housing" not "post-acquisition occupancy of housing."[41]  Defendants also contend and provide summary judgment evidence that they have not discriminated against Plaintiff on the basis of her race, disability, or age and

---

[39]   See Doc. 1, Pl.'s Compl. ¶¶ 36, 37.

[40]   Id. ¶ 37.

[41]   Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 9.

that Plaintiff did not allege in her complaint facts that support an inference of discrimination.[42]  Defendants provide evidence that JHG and the Housing Corp.'s employees were trained on fair housing laws.[43]  Plaintiff failed to respond to Defendants' motion and has thus failed to raise a fact issue of discrimination.  Therefore, summary judgment should be granted on Plaintiff's Fair Housing claim.

### 2.  Section 1981

Section 1981 prohibits racial discrimination in the making or enforcing of contracts.  42 U.S.C. § 1981(a).  As defined by the statute, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

Plaintiff alleged Defendants discriminated against Plaintiff on the basis of her race in violation of Section 1981.[44]  Defendants argue that Plaintiff has not alleged how Defendants discriminated against her and that they have not discriminated against her on the basis of her race.[45]  Defendants also assert that Plaintiff has not

---

[42]   See Doc. 39-1, Ex. A to Def.'s Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 10 ("The Housing Corporation of Greater Houston, Jackson Hinds Gardens, and its staff have not discriminated against [Plaintiff] based on her race, age, or disability").

[43]   See id. ¶¶ 24, 25.

[44]   See Doc. 1, Pl.'s Compl. ¶¶ 53-59.

[45]   See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶¶ 23, 24.

shown how Defendants violated her right to make and enforce contracts under Section 1981.[46]

Defendants present evidence that they did not discriminate against Plaintiff on the basis of her race.[47]  Plaintiff did not provide facts in her complaint demonstrating racial discrimination, and has failed to respond to Defendants' evidence to show how Defendants discriminated against her in violation of Section 1981. Therefore, summary judgment should be granted on Plaintiff's Section 1981 claim.

## B.  State Claims

### 1.  Negligence, Negligence Per Se, and Gross Negligence

The court first considers Plaintiff's negligence-related claims.  In Plaintiff's complaint, she stated that Defendants owed her "a duty to conduct operations so as not to pollute the air rendering Plaintiff's unit a risk to her health and safety from a known impairment."[48]  Furthermore, she alleged Defendants were negligent through:

> a. Failure to adequately perform duties that included duties to repair damage to a complex infestation of vermin, and to maintain, and eradicate vermin; b. Failure to take precautions to prevent environmental contamination; c. Failure to apply separate common sense in repair or replacement of locking mechanisms on doors of a

---

[46]   See id. ¶ 24.

[47]   See Doc. 39-1, Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 10.

[48]   Doc. 1, Pl.'s Compl. ¶ 41.

common unisex bathroom; d. Failure to promptly
respond and mitigate the toxic exposure; e. Failure
to adequately monitor the vermin eradication
treatment process; f. Failure to warn and inform
Plaintiff of the contamination risk in the use of
chemicals unknown to her; g. Failure to adequately
train employees; h. Creation of health and
environmental hazard subjecting the plaintiff to
the present and potential environmental and health
hazards thereby violating the plaintiff's right to
be secure in her person and property; and i. Any
and all other acts of negligence or omissions that
may be demonstrated at trial of this matter.[49]

In response to these allegations by Plaintiff, Defendants argue
that they did not contaminate Plaintiff's unit, that pest-control
treatment on Plaintiff's unit took longer than usual because of her
lack of compliance, and that the locks on the bathrooms worked.[50]
Defendants also argue that Plaintiff did not provide evidence of
causation or damages.[51]

Negligence causes of action require "a legal duty owed by one
person to another, a breach of that duty, and damages proximately
caused by that breach."  D. Hous. Inc. v. Love, 92 S.W.3d 450, 452
(Tex. 2002).

Defendants provide evidence to demonstrate that they did not
act negligently in the manner that Plaintiff alleges.  With their
motion for summary judgment, they provide the sworn testimony of

---

[49]     Id. ¶ 40.

[50]     See Doc. 39, Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J. ¶ 13.

[51]     See id. ¶ 16

Defendant Trottie.[52]   In this affidavit, Defendant Trottie swears that JHG actively worked to eradicate the bedbug issues at the complex, negating Plaintiff's points a. and e.[53]   Furthermore, Defendant Trottie states that Plaintiff's unit was never contaminated with chemicals and Plaintiff was not exposed to any health risks from pest control treatment, rebutting Plaintiff's allegations in b., d., f., and h.[54]   Plaintiff's allegation that Defendants did not maintain proper locks on the bathroom doors is contradicted by Defendants' evidence that the locks passed inspection and there was not a time when there were no working locks on the bathroom doors.[55]   Finally, Defendants respond to Plaintiff's point about lack of proper training by employees by offering evidence that employees of JHG and the Housing Corp. were properly trained in fair housing and disabled resident issues.[56] Plaintiff failed to respond to any of Defendants' evidence supporting their argument that they were not negligent in the operation of the JHG complex.   Therefore, Plaintiff's negligence claims should be dismissed.

   Negligence per se "is a tort concept whereby a legislatively

---

[52]   See Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie.

[53]   See id. ¶ 19.

[54]   See id. ¶ 16.

[55]   See id. ¶¶ 14, 15.

[56]   See id. ¶¶ 24-25, 27.

imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person." Carter v. William Sommerville and Son, Inc., 584 S.W.3d 274, 278 (Tex. 1979). The standard for the conduct of a reasonably prudent person is imposed by a statute in negligence per se cases. Id.

In Plaintiff's negligence per se claim, she alleged that "Defendant violated the standards imposed under state laws and federal laws . . . [which] proximately caused the reactive disorder that injured the plaintiff."[57] Defendants argue that Plaintiff's claim fails because Plaintiff did not allege what statute Defendants violated with their conduct.[58] Defendants base their argument on the contention that a defendant must violate a statute in order for a plaintiff to have a negligence per se claim.[59]

The court agrees Plaintiff failed to cite any statute that Defendants violated that would provide the basis for her claim; instead, she merely alleged that Defendants violated state and federal laws. The court cannot determine on what statute her claim is based from her vague allegations, and the court refuses to speculate about the existence of a statute upon which a negligence per se claim for a "reactive disorder" could be based. Therefore, Plaintiff's negligence per se claim should be dismissed.

---

[57]   See Doc. 1, Pl.'s Compl. ¶ 42.

[58]   See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 14.

[59]   See id.

14

Plaintiff's claim for gross negligence appears to be based on Defendants' conduct in the pest control treatment of Plaintiff's unit.[60]  Plaintiff alleged that they exposed her to pollution and that Defendants did not respond to her notice of issues with her respiratory system from the pest control treatment.[61]  Plaintiff stated that the actions by Defendants were "purposefully harmful."[62]  Defendants argue that they are not liable for gross negligence because Plaintiff has not shown what duty Defendants have to abate the alleged pollution.[63]  Furthermore, Defendants contend that Plaintiff has not provided any evidence that Defendants introduced pollution into her unit.[64]

Under Texas law, gross negligence "consists of both objective and subjective elements." U-Haul Intern., Inc. v. Waldrip, 380 S.W.3d 118, 137.  The elements of a gross negligence cause of action must be proven by the Plaintiff by clear and convincing evidence. Id.  A plaintiff must show that "1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to

---

[60]   See Doc. 1, Pl.'s Compl. ¶ 44.

[61]   See id.

[62]   Id.

[63]   See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 15.

[64]   See id.

others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." <u>Id.</u> (citing Tex. Civ. Prac. & Rem. Code § 41.001(11)).

Gross negligence is a "heightened form of negligence" that, like negligence, "also requires a demonstration of a legal duty." <u>Tomdra Investments, L.L.C. v. CoStar Realty Info., Inc.</u>, 735 F.Supp.2d 528 (N.D. Tex. 2010)(citing <u>Mobil Oil Corp. v. Ellender</u>, 968 S.W.2d 917, 921 (Tex 1998); <u>West v. SMG</u>, 318 S.W.3d 430, 440-43 (Tex. App.–Houston [1st Dist] 2010, no pet.). Determining if there is a duty is a question of law and its existence must be established before looking at breach, causation, and damages. <u>Kroger Co. v. Elwood</u>, 197 S.W.3d 793, 794 (Tex. 2006). A defendant is not liable if there is no duty. <u>Id.</u>

Plaintiff's claim for gross negligence is based on a claim that Defendants introduced pollution into her unit. However, Defendants aver that Plaintiff "has not been exposed to toxic chemicals, pollution, contamination or other potential health hazards as a result of pest control treatment inside her unit."[65] Plaintiff has not responded with any evidence demonstrating that Defendants polluted Plaintiff's unit. Therefore, Plaintiff's claim for gross negligence should be dismissed.

---

[65]     Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 16.

16

### 2.  Trespass

Plaintiff alleged in her complaint that Defendants "intru[ded] into the dwelling of Plaintiff [which] caused an intentional physical interference with the exclusive possession of the plaintiff's property, and an actual physical invasion of the plaintiffs' right of possession."[66]   Plaintiff stated that Defendants did not have the right to enter her property and that their actions also allowed others to wrongfully enter her property.[67]  Defendants argue that they did not trespass because the lease between Plaintiff and JHG allowed them and their agents to enter her unit for inspections and maintenance.[68]

Trespass to land is "an unauthorized entry upon the land of another." Barnes v. Mathis, 353 S.W.3d 760 (Tex. 2011).  "It follows that an entry onto the land of another is wrongful, and therefore actionable, if it is without consent or authorization." Envtl. Processing Sys., L.C. v. FPL Farming Ltd., 457 S.W.3d 414, 424 (Tex. 2015).  A plaintiff has the burden of proof in trespass cases.  Id. at 425.  A plaintiff must "prove that the entry was wrongful, and the plaintiff must do so by establishing that entry was unauthorized or without [her] consent."  Id.

Plaintiff stated in her complaint that Defendants did not have

---

[66]    Doc. 1, Pl.'s Compl. ¶ 46.

[67]    See id.

[68]    See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 18.

a legal right to enter her property.   However, Defendants have provided sworn summary judgment evidence that the lease between Plaintiff and JHG gave them consent to enter for maintenance and inspections, and that these were the only times they entered Plaintiff's unit.[69]   Plaintiff failed to respond with evidence that Defendants entered for an unauthorized purpose.   Therefore, Plaintiff's claim of trespass should be dismissed.

### 3.  Claims under the Texas Property Code

Plaintiff made claims in her complaint under Texas Property Code §§ 92.0081, 92.024, and 92.331.

Under Texas Property Code § 92.0081(a), "a landlord may not remove a door, window, or attic hatchway cover or a lock, latch, hinge, hinge pin, doorknob, or other mechanism connected to a door, window, or attic hatchway cover from premises leased to a tenant . . . unless the landlord removes the item for bona fide repair or replacement."   Tex. Prop. Code § 92.0081(a).   This provision is meant to stop a landlord from removing a lock from a tenant's door unless the landlord is going to repair or replace it.   See id.

In her complaint, Plaintiff claimed that Defendants violated § 92.0081(a) of the Texas Property Code when they changed the bathroom locks in 2008 to "inferior mechanism[s]."[70]   Plaintiff also

---

[69]     See Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 23.

[70]     Doc. 1, Pl.'s Compl. ¶ 61.

18

alleged that the staff at JHG did nothing to stop the men at the complex from entering the bathroom while women were inside.[71] Finally, Plaintiff complains, generally, that Defendants altered windows, but did not explain, when or where or what windows were altered.[72] Defendants argue that Texas Property Code § 92.0081's purpose is to prevent tenants who are behind in rent from being locked out of their apartments by their landlords.[73] Defendants also contend that the locks were never completely removed from any door, and that Plaintiff was never blocked from accessing any areas by JHG.[74]

Defendants provide summary judgment evidence demonstrating that JHG never removed a lock from a bathroom door so that there was not a working lock on the door to protect residents.[75] Also, Defendant Trottie's sworn statement explains that there were interior locking mechanisms on the bathroom doors to allow a user to lock others out.[76] This rebuts Plaintiff's unsworn allegation that people could enter the bathrooms while the doors were locked. Plaintiff did not allege that she was locked out or prevented from

---

[71]    See id. ¶ 62.

[72]    See id. ¶ 64.

[73]    See Doc. 39, Def.'s Mem. in Supp. of Mot. for Summ. J. ¶ 25.

[74]    See id. ¶ 26.

[75]    See Doc. 39-1, Ex. A to Def.'s Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 15.

[76]    See id.

accessing the bathroom during the change in locks, a point which Defendants' summary judgment evidence confirms.[77]   Plaintiff only alleged that the locks were changed, conduct that does not fall within the ambit of Section 92.0081(a) of the Texas Property Code.[78] Plaintiff submitted no evidence to contradict Defendants' evidence. Therefore, summary judgment should be granted on Plaintiff's claim under Texas Property Code § 92.0081(a).

Plaintiff's second claim under the Texas Property Code asserts that Defendants violated Texas Property Code § 92.024 by not providing her with a "true and complete copy of the lease."[79] Defendants argue that Plaintiff admitted in the complaint that she received a copy of her lease when she stated "Plaintiff was successful in securing this HUD lease agreement through legal counsel."[80]   Defendants also contend that Plaintiff received copies of the lease after she signed it and that she has requested and received multiple copies during her tenancy.[81]

Texas Property Code § 92.024 mandates that landlords provide each tenant a copy of the lease within three business days of

---

[77]     See id.

[78]     See Doc. 1, Pl.'s Compl. ¶ 61.

[79]     Id. ¶ 67.

[80]     Id. ¶ 68; see also Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 27 ("Further, Plaintiff admits in the Complaint that Plaintiff has received a copy of the lease through legal counsel, therefore any claim that Defendants have violated Section 92.024 of the Texas Property Code is without merit.").

[81]     See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 27.

signing.  Tex. Prop. Code § 92.024(a).  Even if the landlord does not provide a copy of the lease, the lease is still valid, and a landlord can enforce it.  Tex. Prop. Code § 92.024(c).  A court must abate a proceeding (other than a proceeding for nonpayment of rent) until a landlord gives the tenant a copy of the lease if the tenant shows the landlord violated Property Code Section 92.024(a) or (b).  Tex. Prop. Code § 92.024(d).  To remedy a violation under Texas Property Code § 92.024, a landlord should provide a complete copy of the lease to the tenant.  Tex. Prop. Code § 92.024(e).

In this case, Plaintiff admitted that she received a copy of the lease.[82]  Defendants provided unrebutted summary judgment evidence that it is JHG's practice to give a tenant a copy of her lease after she signs and is approved to live at the property.[83]  Therefore, summary judgment should be granted on Plaintiff's claim under Texas Property Code § 92.024.

Plaintiff's final claim under the Texas Property Code alleged that Defendants retaliated against her for making complaints to agencies in violation of Texas Property Code § 92.331.[84]  Plaintiff alleged that the retaliation was in the form of eviction proceedings.[85]  Defendants argue that this is not considered

---

[82]   See Doc. 1, Pl.'s Compl. ¶ 68.

[83]   See Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 8.

[84]   See Doc. 1, Pl.'s Compl. ¶ 72.

[85]   See id.

retaliation under Texas Property Code §§ 92.331 and 92.332 because, under the terms of the statute, retaliation does not include eviction for nonpayment of rent.[86]  They assert that JHG sought to evict Plaintiff for several reasons, most notably for being behind in her rent at the time of filing the eviction suit.[87]

Under Texas Property Code § 92.331(a)(3), a landlord may not retaliate if a tenant makes a complaint about a building code violation, housing code violation, or utility issue to a governmental entity.  If a tenant makes such a complaint to a governmental entity, the landlord cannot file an eviction proceeding within six months of the complaint.  Tex. Prop. Code § 92.331(b)(1).  However, the Texas Property Code provides several exceptions to the bar on evictions.  Tex. Prop. Code §§ 92.331(b)(1), 92.332(b).  One of these exceptions is if "the tenant is delinquent in rent when the landlord gives notice to vacate or files an eviction action."  Tex. Prop. Code § 92.332(b)(1).

Defendants' summary judgment evidence demonstrates that JHG sought to evict Plaintiff for being delinquent in rent at the time of the filing of the eviction proceeding, which is not prohibited under the Texas Property Code.[88]  Plaintiff has not offered any evidence to show that she was current in rent payments at the time

---

[86]   See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶¶ 28, 29.

[87]   See id. ¶ 29.

[88]   See Doc. 39-1, Ex. A to Def.'s Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 21.

of the filing of the eviction proceeding.  Therefore, Plaintiff's claim under Texas Property Code § 92.332 should be dismissed.

### 4. Intentional Infliction of Emotional Distress and Invasion of Privacy

Plaintiff alleged a cause of action for what she calls "the tort of outrage and invasion of privacy."[89]  Plaintiff has not cited any authority showing that the "tort of outrage" is a recognized cause of action under Texas law, and the court is not aware of any case law recognizing it as a separate tort under Texas law.  Thus, the court construes Plaintiff's allegations to assert a claim of intentional infliction of emotional distress.  See Twyman v. Twyman, 855 S.W.2d 619, 621-22 (Tex. 1993) (recognizing intentional infliction of emotional distress as a cause of action in Texas); see also Van Duzer v. U.S. Bank Nat. Ass'n., 995 F.Supp.2d 673, 700 n.113 (S.D. Tex. 2014)(applying Texas law and finding that there is no authority to support the "tort of outrage" as a separate cause of action from intentional infliction of emotional distress).

Plaintiff's claim is unclear but Plaintiff appears to be alleging that Defendants invaded her privacy by changing the locks on the bathroom doors.[90]  Defendants argue that they did not invade

---

[89]     Doc. 1, Pl.'s Compl. p. 17.

[90]     See id. In addition to Plaintiff's complaints about Defendants' changing the locks on the bathroom doors, Plaintiff additionally makes the following allegation: "In a similar vein, Defendants have taken to conducting mini-sweeps of the premises.  The last of which was Christmas Eve 2013, except the disabled tenants were in proximity to view their units, so the unlawful entry threatened in the notice of the 'fire drill' procedure for that day were thwarted by the former tenant of unit #236, a person with disability status, who summoned

Plaintiff's privacy, their conduct in changing the locks was not outrageous, and they did not act intentionally or recklessly to cause emotional distress to Plaintiff.[91]  Defendants also state that they did not change locks at JHG to infringe residents' privacy rights.[92]

Under Texas law, an intentional infliction of emotional distress claim stands only when the plaintiff establishes that: "(1) the defendant acted intentionally or recklessly; (2) the [defendant's] conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."  GTE S.W., Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999).

Conduct is actionable only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Twyman, 855 S.W.2d at 621-22 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); see also Ward v. Bechtel Corp., 102 F.3d 199, 203 (5th Cir. 1997)(applying Texas law).  Whether conduct is extreme and outrageous is a question of law for the court and must be analyzed on a case-by-case basis.  Wornick Co. v. Casas, 856 S.W.2d 732, 734

the police."  See id. ¶ 75.  Plaintiff's allegations in this paragraph are so unclear that they fail to state a claim upon which relief can be granted.

[91]    See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶ 32.

[92]    See id.

(Tex. 1993).

Turning to the severity element, "[e]motional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." GTE S.W., Inc., 998 S.W.2d at 618. A plaintiff must proffer evidence of distress that is "so severe that no reasonable person could be expected to endure it." Id.

In addition to intentional infliction of emotional distress, Texas courts recognize the tort of invasion of privacy. See, e.g., Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247, 252 (Tex. App.–Houston [1st Dist.] 1993, writ denied)(citing Billings v. Atkinson, 489 S.W.2d 858, 859 (Tex. 1973)). Invasion of privacy has three elements: it is "(1) an intentional intrusion; (2) upon the seclusion, solitude, or private affairs of another; (3) which would be highly offensive to a reasonable person." Farrington, 865 S.W.2d at 252. Courts have also imposed the additional requirement "that the intrusion be unreasonable, unjustified, or unwarranted." Id. Consent is an "absolute defense in any tort action based upon the invasion." Id. (quoting Jennings v. Minco Tech. Labs, Inc., 765 S.W.2d 497, 500 (Tex. App.–Austin 1989, writ denied)).

Looking at Plaintiff's claim of intentional infliction of emotional distress, she has not given the court any evidence that Defendants acted in an extreme and outrageous manner. Changing the locks on the bathroom doors is not extreme and outrageous conduct

if the bathrooms were still available for use.  Plaintiff has not provided any type of response to this to show how Defendants' conduct was extreme and outrageous.  Furthermore, Defendants provided summary judgment evidence that the bathrooms had locking mechanisms on the inside so that no one could enter when someone was in the bathroom.[93]  Thus, the evidence in the record shows that Defendant JHG never created a situation where there were no locks on the doors, and HCHA found no problems with the locks on the bathroom doors during their inspections.[94]  This evidence also rebuts Plaintiff's invasion of privacy claim because it shows that there was protection from intruders when someone was using the bathroom.  Plaintiff failed to provide a response to Defendants' evidence demonstrating that the locks on the bathroom functioned properly.  Therefore, Plaintiff's "tort of outrage" or intentional infliction of emotional distress claim or invasion of privacy should be dismissed.

### 5.  Negligent Hiring, Training, Supervision, and Retention

Plaintiff's final claim in her complaint is that Defendants JHG and the Housing Corp. were negligent in the hiring, supervision, training, and retention of their employees.[95]  She complained that Defendants Trottie and Cote were not properly

---

[93]    See Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶ 15.

[94]    See id.

[95]    See Doc. 1, Pl.'s Compl. ¶¶ 83-88.

trained or supervised on a day-to-day basis.[96]  Plaintiff alleged that Defendant Trottie harassed her, that Defendants should have known Defendant Trottie was incompetent for the position of property manager, that Defendants' employees were not properly trained, and that Defendant Trottie acted in an "illegal and improper" manner.[97]  It is unclear what "illegal and improper" conduct Plaintiff means, as the court understands only that Plaintiff complains that Defendant Trottie denied Plaintiff's request to move to different unit for an extra night because of the pest control treatment of her unit.[98]  Plaintiff alleged she was exposed to toxic chemicals in the treatment of her unit due to Defendant Trottie's behavior.[99]

Defendants argue that Plaintiff has not demonstrated that Defendants' employees committed an actionable tort against her.[100] They also assert that the employees of JHG and the Housing Corp. received proper training on fair-housing and disabled-resident issues, and that Defendant Trottie did not harass any tenants at JHG.[101]

---

[96]    See id. ¶ 85.

[97]    See id.

[98]    See id. ¶¶ 25-30.

[99]    See id. ¶ 30.

[100]    See Doc. 39, Defs.' Mem. in Supp. of Mot. for Summ. J. ¶¶ 35-36.

[101]    See id. ¶ 36.

Employers have a duty to "adequately hire, train, and supervise employees." Mackey v. U.P. Enters., Inc., 935 S.W.2d 446, 459 (Tex. App.–Tyler 1996, no writ). In a negligent hiring, training, supervising, and retention case, a plaintiff must prove damages from the negligent hiring, training, supervising, or retention by the defendant of the employee. Wansey v. Hole, 379 S.W.3d 246, 247 (Tex. 2012)(citing Brown v. Swett & Crawford of Tex., Inc., 178 S.W.3d 373, 384 (Tex. App.–Houston [1st Dist.] 2005, no pet.)); Gonzalez v. Willis, 995 S.W.2d 729, 739 (Tex. App.–San Antonio 1999, no pet.) overruled in part on other grounds by Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 447-48 (Tex. 2004); Mackey, 935 S.W.2d at 459). This requires the plaintiff "to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." Wansey, 379 S.W.3d at 247 (quoting Brown, 178 S.W.3d at 384).

Plaintiff has failed to show an actionable tort committed by Defendants that injured Plaintiff in this context. Defendants provided sworn testimony from Defendant Trottie demonstrating that JHG's staff was trained on fair-housing issues and disabled-resident issues, that the Housing Corp. trained its employees on fair housing laws, and that Defendant Trottie did not harass

Plaintiff.[102]  Plaintiff produced absolutely no evidence to support her claims and contradict what Defendants have offered.  Therefore, Plaintiff's claim of negligent supervision, training, hiring, and retention should be dismissed.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 16th day of September, 2016.

U.S. MAGISTRATE JUDGE

---

[102]    See Doc. 39-1, Ex. A to Defs.' Mem. in Supp. of Mot. for Summ. J., Aff. of Nisha Trottie ¶¶ 24-27.